UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DANIEL MIKHAYLOV,

                    Plaintiff,

                **MEMORANDUM & ORDER**

      -against-                13-CV-2606 (PKC)

UNITED STATES OF AMERICA, *et al.*,

                   Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Before the Court is Defendants' motion to dismiss the amended complaint in this case. The central issue raised by this motion is the Court's authority under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, 114 Stat. 202, *codified in part at* 18 U.S.C. § 983, to decide whether Defendants properly forfeited $195,600 in cash, following its seizure from Plaintiff Daniel Mikhaylov by agents of the Drug Enforcement Administration (the "DEA").[1]  Because the DEA took reasonable steps to notify Mikhaylov of the seizure and because Mikhaylov, in fact, knew of the seizure and the DEA's involvement, Mikhaylov's challenge to the administrative forfeiture under CAFRA is dismissed.  In addition, because CAFRA furnishes the exclusive remedy for challenging the administrative forfeiture, Mikhaylov's *Bivens* claims relating to the forfeiture are dismissed.  Because the United States,

---

[1]     Mikhaylov has named, as Defendants in this case, the United States of America, the DEA, and several of its named and unnamed agents, *i.e.*, David Zekoski, Michele Leonhart, Thomas Harrigan, and "John Doe DEA Agents 1-10" (the "unnamed DEA agents") (collectively, the "individual DEA agents").

the DEA, and its individual agents, in their official capacities, may not be sued, Mikhaylov's other *Bivens* claims against these Defendants are dismissed for lack of subject matter jurisdiction.  Finally, Mikhaylov's remaining *Bivens* claims against the individual DEA agents, in their personal capacities, are improperly venued in the Eastern District, and are transferred to the Central District of California.

I.    Background

A.    *Post-CAFRA Law on Drug-Related Forfeitures*

Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, or the "Controlled Substances Act," 21 U.S.C. § 801 *et seq.*, permits the DEA to seize and then forfeit any funds associated with drug transactions.  *Id.* §§ 881(a)(6), (b).  For drug-related forfeitures, the Controlled Substances Act adopts the same procedures that apply to customs-related forfeitures, as set forth in the Tariff Act of 1930 (the "Tariff Act"), §§ 602-621, 19 U.S.C. §§ 1602-1621.[2]  21 U.S.C. § 881(d); *see also U.S. v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 72 n.1 (2d Cir. 2002) (Sotomayor, J.) (same).  By default, these procedures allow the DEA to proceed administratively against such funds.  19 U.S.C. §§ 1607(a)(1), (4).

---

[2]    CAFRA instituted procedural reforms that apply to drug-related forfeitures under the Controlled Substances Act, but do not apply to customs-related forfeitures under the Tariff Act. *See* 18 U.S.C. § 983(i)(2)(A); *U.S. v. 1996 Freightliner Fld. Tractor VIN 1FUYDXYB0TP822291*, 634 F.3d 1113, 1118 (9th Cir. 2011) (Thomas, J., concurring) (noting that "[18 U.S.C.] § 983(i)(2) does not exempt the forfeiture statute by which the government proceeded against [the individual], 21 U.S.C. § 881(a)(4)"); *see also Malladi Drugs & Pharm., Ltd. v. Tandy*, 552 F.3d 885, 887 (D.C. Cir. 2009) ("The customs laws, as modified by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981, govern the seizure and forfeiture [under the Controlled Substances Act][.]"); *Can v. U.S. Drug Enforcement Agency*, 764 F. Supp. 2d 519, 520 n.1 (W.D.N.Y. 2011) (concluding that CAFRA's exemption for customs-related forfeitures under the Tariff Act does not apply to drug-related forfeitures under the Controlled Substances Act, based on the latter's "mere use of [the Tariff Act's] procedural guidelines").

In conducting the *administrative* proceeding, the DEA is required to (i) send a written "notice of seizure" to any party "who appears to have an interest" in the funds and (ii) publish notices in a newspaper for "three successive weeks."[3]   19 U.S.C. § 1607(a); *see* 18 U.S.C. § 983(a)(1)(A)(i).   If, following the written and published notices, no party submits a claim for the funds by the applicable deadline,[4] the DEA may conclude the administrative proceeding with a "declaration of forfeiture," which has the same force as a "final decree and order of forfeiture" issued in a judicial proceeding.   19 U.S.C. § 1609.   Thereafter, under CAFRA, the "*exclusive remedy for seeking to set aside a declaration of forfeiture*" *in court* is an 18 U.S.C. § 983(e) motion ("Section 983(e) motion").[5]  *Id.* § 983(e)(5) (emphasis added); *see infra* Section II.C.1.

If a party submits a timely claim for the funds, however, the administrative proceeding must be converted into a *judicial* proceeding.   *See* 19 U.S.C. § 1608; 18 U.S.C. § 983(a)(3)(A).[6] In the judicial proceeding, the DEA carries the burden of proving, based on a "preponderance of the evidence," that the funds were properly "subject to forfeiture."  18 U.S.C. § 983(c)(1).  If the

---

[3]      The written and published notices must also include "information on the applicable procedures" with respect to the forfeiture of the funds.  19 U.S.C. § 1607(a).

[4]      CAFRA provides that the applicable deadline shall be "set forth in [the written notice of seizure] (which deadline may be *not earlier than 35 days after the date [the notice] is mailed*), except that if [the notice] is not received, then a claim may be filed *not later than 30 days after the date of final publication of [the notice]*."  18 U.S.C. § 983(a)(2)(B) (emphasis added).

[5]      There also exists a strictly *administrative* remedy: a "petition for the remission or mitigation of such . . . forfeiture."   19 U.S.C. § 1618; *see also* 28 C.F.R. § 9.3 (describing "petitions for remission or mitigation").  Either before or after it declares the forfeiture, the DEA may review such a petition for any "mitigating circumstances" that make remission or mitigation "reasonable and just."   19 U.S.C. § 1618; *see also Malladi Drugs*, 552 F.3d at 887-88 (noting that, after the DEA "administratively forfeits the property by default," a party still may "file a petition for remission or mitigation").

[6]      *See also Malladi Drugs*, 552 F.3d at 887 ("Once notified, interested parties may choose to allow the forfeiture to proceed administratively or may compel the government to initiate a judicial forfeiture action by filing a claim for the property. . . . If an interested party files a timely claim, the administrative forfeiture is terminated and the DEA must file a complaint for judicial forfeiture in the district court[.]").

DEA prevails, the judicial proceeding concludes with the district court's final decree of forfeiture. *See U.S. v. 414 Kings Highway*, 128 F.3d 125, 127 (2d Cir. 1997) ("A 'decree of forfeiture' is a declaration made by the Court upon the Government's successful completion of a forfeiture action, vesting the Government's title to the seized *res*.").[7]

### B.   The Facts[8]

On the afternoon of August 31, 2011, Mikhaylov was "alone in his hotel room" at the JW Marriott Hotel in Los Angeles, California, where he was staying "on a business trip in California to purchase some jewelry" for his business. (Dkt. No. 6 ("Am. Compl.") ¶ 10; Dkt. No. 19 ("Pl.'s Opp."), at 1.) At that time, the unnamed DEA agents entered Mikhaylov's room, and

---

[7]     For a helpful description of the post-CAFRA law on drug-related forfeitures, see *Bermudez v. City of New York Police Department*, No. 07-CV-9537, 2008 WL 3397919, at *3-4 (S.D.N.Y. Aug. 11, 2008).

[8]     The Court draws many of the following facts from the factual allegations contained in Mikhaylov's amended complaint. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (holding that, in terms of "Rule 12(b)(3) dismissals for improper venue," the district court may "rely on *pleadings* and affidavits" to conclude that the plaintiff did not "make a *prima facie* showing of venue") (emphasis added; quotations omitted); *Jaghory v. N.Y. Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) ("Under [Fed. R. Civ. P. 12(b)(1) or 12(b)(6)], the court must accept all factual allegations in the complaint as true[.]"); *Bermudez*, 2008 WL 3397919, at *1-2 (relying on factual allegations in the complaint, even though the court "treated [this case] as a forfeiture proceeding pursuant to 18 U.S.C. § 983(e)").

Because the extrinsic documents cited by the Court pertain to its decision on (i) the Section 983(e) motion and (ii) the bases for jurisdiction and venue over the constitutional tort claims, these documents are *also* judicially noticeable. *See Bermudez*, 2008 WL 3397919, at *2 ("Because we treat this motion as one pursuant to § 983(e) . . . , we look outside the pleadings to evaluate the parties' evidence."); *Patterson v. U.S.*, No. 04-CV-3170, 2005 WL 2414765, at *2, 5 (S.D.N.Y. Sept. 27, 2005) (noting that the court may "refer to matters outside the pleadings such as affidavits and documentary evidence," in considering its "jurisdiction to hear [the plaintiff's] claims challenging the propriety of the forfeiture," after resolving the issue of whether "the DEA's notice was constitutionally inadequate"); *accord Hensley v. U.S. Drug Enforcement Admin.*, No. 07-CV-398, 2008 WL 410695, at *2 (S.D. Cal. Feb. 13, 2008) (noting that "[f]acts supporting venue may be established through evidence outside of the pleadings," where the plaintiffs were suing the DEA for various "acts and omissions" during its "seizure and forfeiture" of the plaintiffs' property).

seized $195,600 in cash from him.  (Am. Compl. ¶¶ 7, 10; Pl.'s Opp., at 1.)  The agents also arrested and confined Mikhaylov in the process.[9]  (Am. Compl. ¶¶ 14-17.)  The agents did not have a warrant, or Mikhaylov's consent, to conduct the seizure, arrest, or confinement.  (*Id.* ¶¶ 11-12, 14-15, 17.)  After the seizure, the agents told Mikhaylov that he would "receive paperwork regarding the money" and "have the opportunity to make a claim for the money."[10] (Dkt. No. 13 ("Pl.'s Decl.") ¶ 4.)

On September 19, 2011, the DEA sent, via certified mail, a written notice of seizure to Mikhaylov at 61-12 99th Street, Apartment 3, Rego Park, New York 11374 (the "Rego Park apartment").  (Am. Compl. ¶ 19; Dkt. No. 12 ("Defs.' Ex."), Exs. 1-2.)  Among other things, the written notice stated that:

> (i) Mikhaylov's money ("Asset Id: 11-DEA-552558") had been "seized by the [DEA] for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881," *i.e.*, the Controlled Substances Act;
>
> (ii) "Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit [the money] [were] underway";
>
> (iii) Mikhaylov could file (a) a petition for the "remission (pardon) or mitigation of the forfeiture . . . within thirty (30) days of your receipt of this notice," and (b) "[i]n addition to, or in lieu of petitioning for remission or mitigation," a claim for his money "by *October 24, 2011*";[11] and
>
> (iv) The filing of a claim would allow Mikhaylov to "contest the forfeiture" in federal district court.

---

[9]      Mikhaylov also alleges, for the first time in his opposition brief, that he was not only arrested and confined, but "thrown out onto the street miles from where he was originally abducted with no money, no phone, and no means of transportation" and "humiliated by being forced to walk through the streets of Los Angeles begging for someone to help him find his way back to his hotel."  (Pl.'s Opp., at 1.)

[10]     In the end, the DEA did not convict Mikhaylov for any crime arising from the seizure. (Am. Compl. ¶ 13.)

[11]     The October 24, 2011 deadline was exactly 35 days after the mailing of the written notice, in accordance with CAFRA. 18 U.S.C. § 983(a)(2)(B).

(Defs.' Ex. 1 (emphasis added).)   The DEA sent identical written notices to the JW Marriott Hotel and another individual.  (Defs.' Exs. 3-6.)

On October 3, 10, and 17, 2011, the DEA also published weekly notices in *The Wall Street Journal* regarding the seizure.  (Defs.' Ex. 7.)  Like the written notices, the published notices stated that (i) the DEA had "seized for forfeiture" Mikhaylov's money, pursuant to the Controlled Substances Act, and (ii) Mikhaylov could petition for remission or mitigation and/or file a claim to contest the forfeiture in federal district court.  (*Id.*)  The published notices further stated that a claim must be filed by no later than *November 17, 2011*.[12]  (*Id.*)

On December 8, 2011, having failed to receive a claim for Mikhaylov's money by the October 24, 2011 and November 17, 2011 deadlines, the DEA concluded the administrative proceeding with a declaration of forfeiture.  (Defs.' Ex. 8.)

As it turned out, Mikhaylov did not receive the written notice in time to make a claim. Although the receipt for the written notice was signed by someone at the Rego Park apartment on September 21, 2011, Mikhaylov had already moved out of that apartment on August 15, 2011, *i.e.*, 16 days before the seizure and about a month before the mailing of the notice.  (Am. Compl. ¶ 20; Defs.' Ex. 2.)  Mikhaylov, thus, did not receive the written notice from the new occupant of that apartment until January 2, 2012.  (Am. Compl. ¶ 21.)

On January 16, 2012, Mikhaylov, by and through his counsel, petitioned for remission or mitigation of the forfeiture.  (Am. Compl. ¶ 21; Defs.' Ex. 9.)  In response to Mikhaylov's petition, the DEA (i) declined to construe the petition as a claim, because the deadline for the

---

[12]      The November 17, 2011 deadline was one day longer than the alternative 30-day filing deadline imposed by CAFRA.  18 U.S.C. § 983(a)(2)(B).

filing of a claim had passed; and (ii) denied the petition, because "once disposal of the forfeited property occurs, a [petition] can no longer be accepted."[13]   (Defs.' Ex. 10.)

On October 12, 2012 and December 19, 2012, Mikhaylov filed his original and amended complaints, respectively.  (Dkt. No. 1; Am. Compl.)  Although Mikhaylov alleges constitutional violations, his amended complaint is more accurately construed as a Section 983(e) motion to set aside the declaration of forfeiture, based on the allegation that the DEA did not reasonably notify him about the seizure of his money.  (Am. Compl. ¶¶ 1, 8 & at 6); *see Bermudez*, 2008 WL 3397919, at *2 & n.6 (noting that, although the plaintiff "filed his complaint pursuant to 42 U.S.C. § 1983 and § 1988," this case "should be treated as a forfeiture proceeding pursuant to 18 U.S.C. § 983(e)").  Indeed, several of Mikhaylov's constitutional tort claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Brennan, J.), aim to achieve the same result as a Section 983(e) motion of undoing the forfeiture.[14]   (*See* Am. Compl. ¶¶ 8, 22-28 & at 6 (alleging, as unconstitutional, the DEA's seizure, subsequent administrative proceeding, and denial of the petition for remission or mitigation).)  The amended

---

[13]      Indeed, while Mikhaylov was technically permitted to file a petition anytime "within 30 days" of his *receipt* of the written notice, the DEA was only required to consider such a petition "*until the property has been forfeited*."  28 C.F.R. § 9.3(a) (emphasis added).  In other words, it was within the DEA's discretion not to consider a post-forfeiture petition.

[14]      Mikhaylov appears to assert his constitutional tort claims under 42 U.S.C. §§ 1981, 1983, and 1985(3).  (Am. Compl. ¶ 8.)  These claims, however, have not been brought against state officials, only the DEA and its individual agents.  *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (Souter, J.) ("[A] *Bivens* action is the federal analog to suits brought against state officials under [Section 1983]."); *Dotson v. Griesa*, 398 F.3d 156, 160, 162 (2d Cir. 2005) (holding that, like Section 1983, Section 1981 "applies only to persons acting under color of state, not federal, law").  Nor do these claims purport to allege an agency-wide conspiracy driven by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (Stewart, J.) (Section 1985(3)).  As such, these claims are *Bivens* claims, not Section 1981, 1983, and 1985(3) claims.

complaint also requests separate monetary relief for *Bivens* claims stemming from the alleged illegality of Mikhaylov's arrest and confinement.  (*Id.* ¶¶ 24-25 & at 6.)

On April 2, 2013, Defendants filed their pending motion to dismiss Mikhaylov's amended complaint based, in relevant part, on lack of subject matter jurisdiction and improper venue.  (Dkt. No. 16 ("Defs.' Br."), at 12-13, 19-22.)  Defendants also opposed, as a matter of law, the Section 983(e) motion.  (*Id.* at 5-12.)  On April 30, 2013, this case was transferred from the Southern District to the Eastern District.  (Dkt. No. 23.)

II.  Discussion

    *A.  Legal Standard*

        1.  Section 983(e) Motion

18 U.S.C. § 983(e) provides, in relevant part, that:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>
> > (A) the Government knew, or reasonably should have known, of the moving party's interest and *failed to take reasonable steps to provide such party with notice*; *and*
> >
> > (B) *the moving party did not know or have reason to know of the seizure* within sufficient time to file a timely claim.

*Id.* § 983(e)(1) (emphasis added); *see also Bermudez*, 2008 WL 3397919, at *4 (summarizing requirements for Section 983(e) motions); *DeSivo v. U.S.*, No. 05-CV-1432, 2006 WL 2620387, at *1 (N.D.N.Y. Sept. 12, 2006) (same).  If the moving party satisfies *both* elements, then "the declaration will be set aside to the interest of the moving party without prejudice to the right of the Government to commence a subsequent [forfeiture] proceeding."  *Bermudez*, 2008 WL 3397919, at *4 (citing 18 U.S.C. § 983(e)(2)(A)).

2. Motions to Dismiss for Lack of Subject Matter Jurisdiction or Improper Venue, Fed. R. Civ. P. 12(b)(1), (3)

Dismissals for lack of subject matter jurisdiction are appropriate "when the district court lacks the statutory or constitutional power to adjudicate [a case]." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* At the "pleading stage," however, the district court "'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor'" to determine if it has subject matter jurisdiction. *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Merritt v. Shuttle, Inc.*, 245 F.3d 182 (2d Cir. 2001) (Sotomayor, J.)).

Similarly, with respect to dismissals for improper venue, the plaintiff bears the burden of proving that venue is proper by a "preponderance of the evidence"; but, where the district court merely relies on "pleadings and affidavits," the plaintiff need only make a "*prima facie* showing" of venue. *Gulf Ins. Co.*, 417 F.3d at 355 (quotations omitted). "In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). If venue is improper, then the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

B. *Section 983(e) Motion*

Defendants argue that the Section 983(e) motion should be denied, because Mikhaylov failed to satisfy both elements of that statute. (Defs.' Br., at 7.) According to Defendants, "(a) the DEA took reasonable steps to provide notice to [Mikhaylov]; and (b) [Mikhaylov] had knowledge of the seizure." (*Id.*) The Court agrees.

1.   Reasonable Notice

To determine whether the DEA reasonably notified Mikhaylov about the seizure, the Court applies the straightforward due process standard of "reasonableness under the circumstances," which derives from *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (Jackson, J.).  *Dusenbery v. U.S.*, 534 U.S. 161, 163-64, 167-68 (2002) (Rehnquist, C.J.) (applying *Mullane* to a "question[] regarding the adequacy of the method used to give notice" about the FBI's seizure of funds subject to a drug-related forfeiture).  A written notice sent, via certified mail, to any known addresses, combined with published notices, ordinarily satisfies the *Mullane* standard.  *See Dusenbery*, 534 U.S. at 169 & n.4 (collecting cases).

In this case, the DEA sent a written notice to Mikhaylov's Rego Park apartment and published three notices in *The Wall Street Journal*, which, contrary to what Mikhaylov argues (Pl.'s Opp., at 3), is widely circulated in New York, as well as California.  *See Kairis v. U.S.*, No. 02-CV-1337, 2006 WL 2708555, at *2 (N.D.N.Y. Sept. 20, 2006) (McAvoy, J., adopting Report-Recommendation of Treece, Mag. J.) ("The notice of seizure of the property was also published in *The Wall Street Journal*, a newspaper that circulates in the Northern District of New York[.]").  The DEA's notices, therefore, appeared to be reasonably designed to apprise Mikhaylov of the seizure.

Mikhaylov's primary argument is that he did not see the written notice before his money was administratively forfeited, because the DEA sent the written notice to his Rego Park apartment, rather than his new address.  (Pl.'s Opp., at 2-5.)  The DEA's failure to *actually* notify Mikhaylov in writing, however, did not render its written and published notices unreasonable.

As the Supreme Court has recognized, "none of our cases . . . has required actual notice in [drug-related forfeiture] proceedings." *Dusenbery*, 534 U.S. at 170.[15]

The only arguable exceptions are:  where the government knows or should know that the written notice will not reach the intended recipient (*e.g.*, the written notice is returned as undeliverable), *and* it can obtain the recipient's correct address internally (*e.g.*, the recipient is already in the government's custody).  *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1161 (2d Cir. 1994).[16]  Or, where the government knows or should know that the intended recipient will not understand the written notice (*e.g.*, the recipient lacks the mental capacity).  *Covey v. Town of Somers*, 351 U.S. 141, 146 (1956) (Warren, C.J.).[17]  This case implicates neither of these exceptions.

---

[15]     *See also Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988) ("The proper inquiry [under *Mullane*] is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice.").

[16]     *See also Robinson v. Hanrahan*, 409 U.S. 38, 38, 40 (1972) (per curiam) (holding that the State's "notice of the pending forfeiture proceedings" was unreasonable, where "the State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail"); *Krecioch v. U.S.*, 221 F.3d 976, 980-81 (7th Cir. 2000) (concluding that the DEA "knew that the claimant would not receive [the notice with respect to his weapons]," and that "when the claimant is incarcerated or in government custody, the ease of learning the claimant's location makes it in most cases unreasonable for the forfeiting agency to fail to ascertain the location of one it knows to be in government custody") (quotations omitted); *Bermudez*, 2008 WL 3397919, at *5-6 (finding that it was unreasonable for the DEA not to place a "simple call to the NYPD," which carried out the original seizure, to confirm "the plaintiff's whereabouts," *after* the DEA's receipt of the "unclaimed certified mail"); *DeSivo*, 2006 WL 2620387, at *2 (noting that nothing suggested to the DEA that "the notices were sent to an improper address, were not delivered, or otherwise were not reasonably calculated under the circumstances").

[17]     *See also U.S. v. Barrett*, 32 F. App'x 612, 614 (2d Cir. Apr. 5, 2002) (finding that the DEA's notices were reasonable, where "[t]here was no assertion that the DEA should have had knowledge of any [mental] incapacitation"); *Whiting v. U.S.*, 231 F.3d 70, 76 (1st Cir. 2000) (citing *Covey* with approval); *Weigner*, 852 F.2d at 650 n.4 (same).  The exception does not extend to a non-English speaking recipient of an English-language notice.  *See Toure v. U.S.*, 24 F.3d 444, 445-46 (2d Cir. 1994) (per curiam) (rejecting the argument that "the administrative [drug-related] forfeiture was procedurally deficient because the Government provided notice of

There is no allegation that the DEA knew or should have known that the written notice sent to Mikhaylov's Rego Park apartment would not reach him.  (*See* Pl.'s Opp., at 4 (alleging only that the DEA "could have reasonably discovered the Plaintiff's new address").)   On the contrary, the DEA received a signed receipt, confirming delivery to the Rego Park apartment, and thus had no way of knowing, or reason to believe, that the written notice was sent to the wrong address.  *See Krecioch*, 221 F.3d at 979, 981 (finding "no evidence that the DEA knew or should have known at the time of mailing that the notice [of the seizure with respect to the plaintiff's automobiles and cash] would be ineffective," where return receipts were signed by his sister and his business partner's wife but the notice did not reach the plaintiff).[18]   Nor did the DEA allegedly have internal access to Mikhaylov's new address.   Mikhaylov only insists that the DEA could have "first attempted to call [him]" and then "contacted the person living at [Mikhaylov's Rego Park apartment] to find out his new address."  (Pl.'s Opp., at 1-2.)   Due process, however, "does not require . . . heroic efforts by the Government," particularly where, as here, the DEA reasonably believed that the written notice had already reached Mikhaylov at his

---

seizure in English, which [the plaintiff], whose native language is French, allegedly was unable to understand completely").

[18]     *See also Dusenbery*, 534 U.S. at 168-69, 172 (holding that the FBI provided reasonable notice, where it had received a receipt for the notice signed by the staff of the prison in which the plaintiff was incarcerated); *DeSivo*, 2006 WL 2620387, at *2 ("[A]s far as the government knew, both notices [to the plaintiff's known residence and his place of incarceration] were delivered as evidenced by the completed return receipts.").  Mikhaylov attempts to distinguish *Dusenbery* and other cases on the basis that they did not involve a written notice "sent to the wrong address." (Pl.'s Opp., at 3-4.)  This is a distinction without a difference.  These cases support the general proposition that—where, as here, a government agency receives a signed receipt confirming delivery of a notice to a recipient's known address, whether it is correct or not—the agency's belief that the notice reached its intended recipient is reasonable.

Rego Park apartment. *Dusenbery*, 534 U.S. at 170.[19]  Moreover, it is not proper for the Court to

penalize the DEA for current practices that it might improve upon in the future. *Id.* at 172.[20]

The Court, therefore, finds that, after seizing and commencing the administrative

proceeding to forfeit Mikhaylov's money, the DEA took "reasonable steps to provide [him] with

notice" thereof.  18 U.S.C. § 983(e)(1)(A).

### 2.  Knowledge

Assuming for the sake of argument that the DEA's written and published notices were

unreasonable, the Court must determine whether Mikhaylov did not know or have reason to

know of the seizure, such that he was unable to timely challenge the seizure.  Congress's specific

use of the word "seizure" in 18 U.S.C. § 983(e)(1)(B), and not "forfeiture," is significant, given

that it used the word "forfeiture" elsewhere in CAFRA.[21]  18 U.S.C. § 983; *see Russello v. U.S.*,

464 U.S. 16, 23 (1983) (Blackmun, J.) ("Where Congress includes particular language in one

section of a statute but omits it in another section of the same Act, it is generally presumed that

---

[19]   *See also Krecioch*, 221 F.3d at 981 (rejecting the plaintiff's argument that "the DEA could have easily effected actual notice [of the seizure with respect to his automobiles and cash] by having the DEA officer at his August 12 hearing give him actual notice," because, while "this would have been preferable, . . . due process does not, of course, require that authorities use the best possible method of notification") (quotations omitted); *Torres*, 25 F.3d at 1161 (noting, "where the mailed notice of [a drug-related] forfeiture is returned undelivered," that notice is only insufficient if "[the plaintiff] was residing at a place of the government's choosing, not his own," thus making the DEA's lack of knowledge on his whereabouts "easily curable").

[20]   Furthermore, Mikhaylov has not alleged, nor is there any evidence suggesting, that he lacked the mental capacity to comprehend the written notice.

[21]   Nonetheless, some courts have taken the position that the moving party must have knowledge of the seizure *and* forfeiture.  *See Hayes v. U.S.*, No. 08-CV-6525, 2009 WL 1856789, at *10 (S.D.N.Y. Feb. 18, 2009) (Pitman, Mag. J.) (noting that "[c]ourts are divided" on whether a Section 983(e) motion requires "lack of knowledge of the seizure or lack of knowledge of the forfeiture proceedings"; and merely assuming, but not deciding, that "notice of the seizure is insufficient"), *report-recommendation adopted on other grounds by*, 2009 WL 1867965 (S.D.N.Y. June 29, 2009) (Berman, J.).

Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotations omitted).

To this end, some courts have concluded that the moving party's mere knowledge that his property has been seized, regardless of whether he knows that it will be forfeited, defeats a Section 983(e) motion. *See Johnson v. U.S.*, No. 03-CV-281, 2004 WL 2538649, at *4 (S.D. Ind. Oct. 22, 2004) (holding that 18 U.S.C. § 983(e) "pertains to the seizure itself, not knowledge of agencies in possession of the property after seizure," and thus finding that the plaintiff "failed to show that [he] did not know or have reason to know of the seizure," when, in fact, he was "present during the seizure").[22]

Other courts, while accepting the notion that knowledge of the seizure alone defeats a Section 983(e) motion, require that such knowledge be agency-specific—that is, that the moving party know enough about the *forfeiting* agency's involvement in the seizure "to file a claim with [that] agency," even if he is not aware that it intends to forfeit his property. *See Bermudez*, 2008 WL 3397919, at *6 (finding that, "[a]lthough Plaintiff was under the impression that his money had been seized by the NYPD, he had absolutely no reason to believe that his money had been seized by the [DEA]," and that the plaintiff "did not learn of the DEA's involvement" in the

---

[22]     *See also In re Sowell*, No. 08-CV-51163, 2009 WL 799570, at *3 (E.D. Mich. Mar. 19, 2009) (adopting the rule that "the second requirement of section 983(e)(1) cannot be met where the claimants were present at the time of the seizure" and thus "had knowledge of [the] seizure[]"); *U.S. v. Russell*, No. 04-CR-150, 2006 WL 2786883, at *3 (M.D. Ala. Sept. 27, 2006) (Thompson, J., adopting Report-Recommendation of Walker, Mag. J.) (denying the petitioner's Section 983(e) motion, where he "appears to have known of the seizure on the date that it occurred since he was aware that the officers took the shoe box with the drugs and money from the table in the hotel room which he had just exited"); *Harrington v. U.S. Drug Enforcement Agency*, No. 05-CV-206, 2006 WL 897221, at *4 (E.D. Ky. Apr. 6, 2006) ("The moving party [under 18 U.S.C. § 983(e)] . . . knew that the DEA had seized the money from his pocket, and he admits that he had sufficient notice of the seizure to have purportedly made demands for a receipt from [the DEA agent] at the time.").

seizure until *after* "[it] had already administratively forfeited the property").[23]   Thus, under *Bermudez*, the moving party's knowledge of the seizure *and* the identity of the forfeiting agency behind the seizure is necessary to defeat a Section 983(e) motion.   2008 WL 3397919, at *6. Alternatively worded, on a Section 983(e) motion, the moving party only has to demonstrate that he did not know of the seizure *or* that the forfeiting agency was involved.

The Court, however, need not decide which approach correctly interprets the second element of 18 U.S.C. § 983(e)(1).   Even under the more pro-plaintiff standard applied in *Bermudez*, Mikhaylov cannot prevail.   There is no question that Mikhaylov knew of both the seizure *and* the involvement of the DEA, the forfeiting agency, because he was present for the seizure, during which the agents identified themselves as DEA agents.[24]   Indeed, Mikhaylov merely disputes knowing the DEA's "reason for the seizure" and its intent to "conduct a forfeiture hearing" and "keep" his money (Pl.'s Decl. ¶ 3; Pl.'s Opp., at 5), not the fact that agents of the DEA had seized his money.   As such, even without knowledge that the seized money would be forfeited, Mikhaylov knew that the DEA took that money, which enabled him to make a claim before the agency.

The Court, therefore, finds that Mikhaylov *did* "know or have reason to know of the seizure within sufficient time to file a timely claim."   18 U.S.C. § 983(e)(1)(B).   Accordingly,

---

[23]     *See also U.S. v. Hill*, No. 12-CR-04, 2014 WL 971748, at *5 (D. Vt. Mar. 12, 2014) ("Without knowing which law enforcement agency ultimately took possession, [the petitioner] could not have known where to file [a claim].   Therefore, [his] claim satisfies the second element of § 983(e)."); *Can*, 764 F. Supp. 2d at 522 (denying a Section 983(e) motion, in the alternative, where "[the plaintiff] himself knew of the seizure [by local officers] *and* the DEA's involvement in it") (emphasis added).

[24]     Furthermore, while not required under *Bermudez*, Mikhaylov was told, at the time of the seizure, that he could make a claim with the DEA for the return of his money.   *See supra* Section I.B.

due to Mikhaylov's inability to satisfy either element of 18 U.S.C. § 983(e)(1), the Court DENIES his Section 983(e) motion.

    C.  Bivens *Claims*

      1.  Subject Matter Jurisdiction Over Claims Relating to the Forfeiture

As stated above, in addition to moving under 18 U.S.C. § 983(e) to set aside the declaration of forfeiture, Mikhaylov asserts *Bivens* claims to undo the forfeiture, based on the DEA's seizure, subsequent administrative proceeding, and denial of the petition for remission or mitigation. Given Congress's intent that Section 983(e) motions serve as the exclusive remedy for challenging administrative forfeitures, and given the Court's denial of Mikhaylov's Section 983(e) motion, the Court must determine whether it has subject matter jurisdiction over Mikhaylov's *Bivens* claims challenging the forfeiture. *Cf. Henderson v. Shinseki*, __ U.S. __, 131 S.Ct. 1197, 1202 (2011) (Alito, J.) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98, 101 (1998) (Scalia, J.) (upholding "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits"). The Court finds that it does not.

In enacting CAFRA, Congress designated a Section 983(e) motion as the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). Where Congress provides an "alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally

effective," this remedy shall defeat any *Bivens* claims relating thereto.  *Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (Brennan, J.) (emphasis omitted).[25]

Based on Congress's "explicit[]" statement in CAFRA that a Section 983(e) motion will be the sole remedy to challenge a declaration of forfeiture after an administrative proceeding, courts may not also entertain such challenges in the *Bivens* context, as a remedial alternative.  *Id.* at 18.  Although a Section 983(e) motion narrowly addresses whether the moving party had reasonable notice or other knowledge of the seizure, it provides an "effective" alternative to a *Bivens* claim following an *administrative* forfeiture, because, in the absence of such notice or knowledge, that party would have been able to file a claim to contest the forfeiture *judicially*—at which time, the court would have considered all the merits of the forfeiture, including the basis for the seizure.  *Id.* at 19.

As such, other courts have held, in cases involving a declaration of forfeiture, that they lack subject matter jurisdiction to consider anything but a Section 983(e) motion.  *See Bermudez*, 2008 WL 3397919, at *2 & n.6 (holding that, although the plaintiff also brought claims under 42 U.S.C. § 1983 and § 1988, "alleging that his personal property was illegally seized and forfeited," his "sole remedy to challenge a completed administrative forfeiture is a motion pursuant to [Section] 983(e), which we rule on today").[26]  As such, the Court echoes what these

---

[25]     *See also Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988) (O'Connor, J.) (holding, where "Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur," that "we have not created additional *Bivens* remedies"); *Bush v. Lucas*, 462 U.S. 367, 378 (1983) (Stevens, J.) ("When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the Court's power should not be exercised [*e.g.*, over *Bivens* claims].").

[26]     *See also Francis v. Miligan*, 530 F. App'x 138, 139 (3d Cir. July 17, 2013) ("[18 U.S.C. § 983(e)] provides a remedy for the very claim [the plaintiff] sought to bring under *Bivens*, and it provides the *exclusive* remedy for such a claim.  Courts should not extend *Bivens* when an

courts have already said, namely, that Mikhaylov's exclusive remedy with respect to the forfeiture of his money is a Section 983(e) motion and not additional *Bivens* claims.

Moreover, to the extent that the forfeiture-related *Bivens* claims are, in effect, an appeal from the DEA's denial of the petition for remission or mitigation, Mikhaylov ignores that such a petition is a strictly administrative remedy that the Court may not review. Indeed "[i]f a party pursues the administrative path, files a petition for remission, and the petition is denied [by the DEA], the only avenue to set aside the declaration of forfeiture [in court] is [18 U.S.C. § 983(e)]." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011); *see LaChance v. Drug Enforcement Admin.*, 672 F. Supp. 76, 79-80 (E.D.N.Y. 1987) (holding, even *pre-*

---

alternative remedy exists.") (citations omitted); *Conard v. U.S.*, 470 F. App'x 336, 339 (5th Cir. May 2, 2012) ("[T]he district court was deprived of its equitable remedy jurisdiction after CAFRA's enactment in 2000."); *Mesa Valderrama v. U.S.*, 417 F.3d 1189, 1196 (11th Cir. 2005) (agreeing that the plaintiff may not challenge the "validity of the agency's seizure and forfeiture of the check," since a Section 983(e) motion, as his "exclusive remedy," only permits the court to consider "whether [he] received the appropriate notice in sufficient time to contest the agency's action of summarily forfeiting the check"); *Lucas v. U.S.*, No. 13-CV-855, 2014 WL 2176612, at *1 n.2 (N.D.N.Y. May 22, 2014) (finding that "the merits of the underlying forfeiture, and whether the initial seizure of the money was supported by sufficient evidence" are "not properly before the court," because a Section 983(e) motion provides the "sole remedy"); *Hill*, 2014 WL 971748, at *4 n.5 ("Section 983(e) . . . does not supply jurisdiction to review the merits of the completed forfeiture or to address [the petitioner's] argument that the currency was illegally seized."); *U.S. v. Pickett*, No. 07-CR-117, 2011 WL 3876974, at *2 (E.D.N.Y. Sept. 1, 2011) ("The limitation in § 983(e) is jurisdictional and must be strictly construed. Therefore, because an attack on the merits of a forfeiture determination is not an action brought under [that section], I do not have subject matter jurisdiction over such a claim.") (citations omitted); *Hayes*, 2009 WL 1856789, at *8-9 (concluding that any "equitable actions challenging civil forfeiture proceedings," as recognized by the Second Circuit, are "superseded by the mechanism set forth in subsection 983(e)"); *King v. Drug Enforcement Admin.*, No. 07-CV-4155, 2009 WL 6849443, at *1 (D.S.C. Feb. 3, 2009) ("Plaintiff's exclusive remedy for challenging the forfeiture does not lie in [a] [sic] *Bivens* action for damages, but rather in a motion filed under 18 U.S.C. § 983(e)."), *aff'd sub nom. King v. Does*, 331 F. App'x 241 (4th Cir. Aug. 19, 2009); *DeSivo*, 2006 WL 2620387, at *2-3 ("Once forfeiture has occurred, . . . the sole remedy is that provided under 18 U.S.C. § 983(e) to challenge whether the DEA followed the proper procedural safeguards in forfeiting the property . . . . [T]he time to challenge the substantive basis of the forfeiture has passed.").

CAFRA, that "this court lacks subject matter jurisdiction to review the decision of the DEA which denied plaintiff's petition for remission of the forfeiture," where the plaintiff failed to file a claim and solely took the "administrative route").

Accordingly, based on the absence of subject matter jurisdiction, the Court DISMISSES the *Bivens* claims relating to the forfeiture.

### 2. Jurisdiction and Venue Over Claims Relating to the Arrest and Confinement

As for the remaining *Bivens* claims relating to Mikhaylov's arrest and confinement, Defendants argue that (i) insofar as these claims are against the United States, the DEA, and its individual agents in their *official* capacities, there is no subject matter jurisdiction (Defs.' Br., at 12-13); and (ii) as against these agents in their *personal* capacities, the venue for these claims in the Eastern District is improper (*id.* at 19-22). The Court agrees.

First, *Bivens* merely permits constitutional tort claims for monetary relief against federal agents in their personal capacities. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (Thomas, J.) (holding that "*Bivens*-type actions" only apply to "federal *agents*," who may *personally* "invoke[] the protection of qualified immunity") (emphasis in the original).[27] Similar claims, however, may not be brought against the United States, federal agencies, or, by the same token, federal agents in their official capacities. *See id.* at 484-85 (confirming that, under *Bivens*, a "direct action against the Government [is] not available," and further declining to recognize a

---

[27] *See also Wilson v. Layne*, 526 U.S. 603, 608 (1999) (Rehnquist, C.J.) ("Petitioners sued the law enforcement officials in their personal capacities for money damages under [*Bivens*].") (citations omitted); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("[*Bivens* actions] must be brought against the federal officers involved in their individual capacities."); Cornelia T. Pillard, Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under Bivens, 88 Geo. L.J. 65, 65, 67 (1999) (stating that "the Court in *Bivens* held that constitutional tort actions could be brought against government officials only in their individual capacities," though, in practice, the government "represents or pays for representation of" the officials).

"*Bivens*-type cause of action directly against a federal agency"); *Ky. v. Graham*, 473 U.S. 159, 166 (1985) (Marshall, J.) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").[28]  For this reason, the *Bivens* claims against the United States, the DEA, and its individual agents in their official capacities fail.

Second, with respect to the *Bivens* claims against the DEA's individual agents in their personal capacities, these claims belong in a "judicial district" where (i) "any defendant resides, if all defendants are residents of the State in which the district is located"; (ii) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; *or* (iii), "*if there is no district in which an action may otherwise be brought as provided in this section*, . . . any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b) (emphasis added); *see also Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) ("In a *Bivens* action, venue is governed by 28 U.S.C. § 1391(b)[.]").  Because none of the individual agents allegedly live in the same state, let alone in New York (Am. Compl. ¶¶ 4-7), the proper venue for these claims appears to be the Central District of California, where they arrested and confined Mikhaylov.

Typically, in a "case involving multiple claims" like this one, "dismissal of an improperly venued claim is not warranted if it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief."  *U.S. Envtl. Prot. Agency*

---

[28]    *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 72 (2001) (Rehnquist, C.J.) (noting that a plaintiff "may not bring a *Bivens* claim against the officer's employer, the United States, or the [federal agency]," and also refusing to "extend this limited holding [in *Bivens*] to confer a right of action for damages against private entities [*i.e.*, companies] acting under color of federal law"); *Caraveo v. U.S. Equal Emp't Opportunity Comm'n*, 96 F. App'x 738, 740 (2d Cir. Mar. 26, 2004) ("*Bivens* actions, however, do not lie against federal agencies or against federal employees sued in their official capacities."); *Robinson*, 21 F.3d at 510 (barring a "[*Bivens*] action against a federal agency or federal officers in their official capacities" based on "want of subject matter jurisdiction").

ex rel. *McKeown v. Port Auth. of N.Y. & N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), *aff'd sub nom. McKeown v. Del. Bridge Auth.*, 23 F. App'x 81 (2d Cir. Dec. 21, 2001). Because the Section 983(e) motion and improperly-asserted *Bivens* claims against the United States, the DEA, and its individual agents in their official capacities have been dismissed, however, there are no "properly venued" claims, as argued by Mikhaylov (Pl.'s Opp., at 8).[29]   The Court, therefore, must transfer this case, based on the remaining personal-capacity claims against the individual agents under *Bivens*, to the correct district, that is, the Central District of California. 28 U.S.C. § 1406(a).

Accordingly, the Court (i) DISMISSES the *Bivens* claims relating to Mikhaylov's arrest and confinement, as against the United States, the DEA, and its individual agents in their official capacities, for lack of subject matter jurisdiction; and (ii) TRANSFERS this case and the remaining claims against the individual agents in their personal capacities to the Central District of California.

III. Conclusion

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss, thereby (i) denying Mikhaylov's Section 983(e) motion; (ii) dismissing the *Bivens* claims relating to the forfeiture; and (iii) dismissing in part, and transferring in part to the Central District of California, the *Bivens* claims relating to the arrest and confinement. The Clerk of the Court is directed to enter a final judgment accordingly.

---

[29]   Mikhyalov claims proper venue based on 28 U.S.C. § 1391(e), which only applies where "a defendant is an officer or employee of the United States or any agency thereof acting *in his official capacity* or under color of legal authority, or an agency of the United States, or the United States." *Id.* (emphasis added). This provision is inapplicable to the personal-capacity claims that remain.

SO ORDERED:


 /s/ Pamela K. Chen_____
PAMELA K. CHEN
United States District Judge

Dated: July 7, 2014
          Brooklyn, New York